## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DALE LYNN FERRIS,** | : | |
| **Plaintiff** | | |
| | : | |
| **v.** | | **CIVIL ACTION NO. 1:CV-07-501** |
| | : | |
| **MICHAEL J. ASTRUE,** | | **(CALDWELL, D.J.)** |
| **Commissioner of** | : | **(MANNION, M.J.)** |
| **Social Security** | | |
| **Defendant** | : | |

### REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the Plaintiff's claim for Supplemental Security Income, ("SSI"), under Title XVI of the Social Security Act, ("Act").  42 U.S.C. §§ 1381-1383f.


I.    **PROCEDURAL HISTORY.**

The Plaintiff protectively filed an application for SSI on June 2, 2004, alleging disability since March 17, 2003 due to a seizure disorder and depression. (TR. 45-48, 56, 236, 488-89).  The state agency denied his claim initially. (TR. 32-35).  The Plaintiff filed a timely request for a hearing (TR. 36), and a hearing was held before an Administrative Law Judge ("ALJ") on February 18, 2004.  (TR. 189-208).  At the hearing, the Plaintiff, represented by counsel, and a vocational expert ("VE") testified.  (TR. 191-208).  The Plaintiff was denied benefits pursuant to the ALJ's decision of March 15, 2004.  (TR. 13-24, 248-59).

The Plaintiff requested review of the ALJ's decision. (TR. 11-12).  The Appeals Council denied his request on June 4, 2004, thereby making the

ALJ's decision the final decision of the Commissioner.  (TR. 5-8).  42 U.S.C. § 405(g).

On August 2, 2004, the Plaintiff filed a civil action in the United States District Court for the Middle District of Pennsylvania.  (TR. 292-96).  The District Court thereafter remanded the case to the ALJ for further consideration and analysis of the Plaintiff's daily activities, subjective symptoms, credibility and work history.  (TR. 297-313).  On remand, the Plaintiff submitted additional medical evidence.  A supplemental ALJ hearing was held on November 16, 2005.  (TR. 484-519).

At the supplemental ALJ hearing, the Plaintiff, represented by counsel, a medical expert ("ME") and a vocational expert testified.  (TR. 486-518).  The Plaintiff was again denied benefits pursuant to the ALJ's decision of December 6, 2005.  (TR. 232-42).

The Plaintiff requested review of the ALJ's decision.  (TR. 212-13).  On February 1, 2007, the Appeals Council found no reason to assume jurisdiction, thereby making the ALJ's December 6, 2005 decision the final decision of the Commissioner. (TR. 209-11). The December 6, 2005 decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 9 and 10).

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.    ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520 (2004). *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does

not proceed any further.  20 C.F.R. § 404.1520.

The first step of the process requires the Plaintiff to establish that she has not engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. § 404.1520(c).  At step three, the Commissioner must determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.  20 C.F.R. § 404.1520(d).

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue to step four and consider whether the Plaintiff establishes that he is unable to perform his past relevant work.  20 C.F.R. §§ 404.1520(e)-(f).  The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).  This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

In the instant matter, the ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Act.  (TR. 235-42).  At step one, the ALJ found that the Plaintiff has not engaged in substantial gainful work activity since his alleged disability onset date, March 17, 2003.  (TR. 236).  At step two, the ALJ concluded that the Plaintiff's impairments of seizure disorder and depression were severe within the meaning of the Regulations.  (TR. 237).

At step three, the ALJ found that the Plaintiff's severe impairments were

4

not severe enough, either singly or in combination, to meet or medically equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4.  (TR. 237).

At step four, the ALJ found that the Plaintiff is not able to perform any of his past relevant work.  (TR. 239-41).  The ALJ found at step five that the Plaintiff has the residual functional capacity ("RFC") to perform a limited range of medium work.  (TR. 237-41).  Based on the testimony of the impartial vocational expert, the ALJ found that a significant number of other jobs exist in the regional and national economies that the Plaintiff could perform.  (TR. 239-41).  Thus, the ALJ concluded that the Plaintiff was not disabled within the meaning of the Act.  (TR. 240-41).  20 C.F.R. § 416.920(g).

## IV.   BACKGROUND.

### A.  Factual Background.

The Plaintiff was born on October 27, 1969 and was thirty-three years old on his alleged disability onset date.  (TR. 52, 505-06).  Thus, the Plaintiff is considered a "younger person" under the Regulations.  (TR. 511).  20 C.F.R. §§ 404.1563(c) and 416.963(c).

On the Plaintiff's March 18, 2003 Employability Assessment Form, he was asked to explain why he believes he cannot work. The Plaintiff responded:

> I can work, I just cannot work with moving machinery due to seizure disorder. The seizures are controlled with medication, the seizure disorder will last until I die. I'm limited to certain jobs that are not always available in this area (Bradford County).  Employment is at risk due to my epilepsy (Insurance reasons), that's what I'm told everywhere I apply for employment.

(TR. 82).

The Plaintiff graduated high school in special education classes.  (TR.

506-07).  The Plaintiff has past relevant work experience as a farm laborer, janitor, dishwasher and production worker.  (TR. 504).  He alleges disability due to a seizure disorder and depression.  (TR. 488-89).

The Plaintiff testified that when he suffers from seizures, he gets a loud ringing in his ear, he shakes and sometimes loses control of his bowels.  (TR. 490).  After the seizures, he is very tired.  He began experiencing seizures at age eighteen or nineteen and was diagnosed with seizure disorder in 1986.  (TR. 496, 508).  The Plaintiff's sister described his seizures as shaking, his eyes rolling back, swallowing his tongue and turning blue.  (TR. 491).

Medical expert, Basil RuDusky, M.D., testified that the Plaintiff suffers from a presumed diagnosis of a seizure disorder, type uncertain.  (TR. 491).  Dr. RuDusky stated that the Plaintiff would not be able to climb or work in high places, would not be able to work around moving machinery that would put himself in danger, and would not be able to utilize equipment or machinery that would put others in danger. (TR. 493-94). The Plaintiff's seizure disorder appears to be well-controlled with medication.  (TR. 494-95).  Dr. RuDusky testified that the Plaintiff's medications may cause tiredness and fatigue.  (TR. 495-96, 498).

Dr. RuDusky testified that depression can be a side effect or outcome of having a seizure disorder.  (TR. 497).  Seizure disorder and depression can affect an individual's ability to work, depending on the individual's tolerance of other people.   The disorders can also affect the ability to concentrate, depending on the individual and his physical conditioning.  (TR. 497).

Dr. RuDusky testified that the Plaintiff's carpal tunnel syndrome would have very little effect on his ability to use his hands at work.  (TR. 498).

The Plaintiff testified at the first ALJ hearing that his seizures are well-controlled.  (TR. 195, 298, 499).  The Plaintiff wakes up around 8:00 a.m. or 9:00 a.m.  (TR. 499).  He then gets dressed, makes coffee and sits around the

house.  During a typical day, the Plaintiff attempts to read, walks five blocks to the library to rent a video or listens to music.  (TR. 499, 501).  He is able to walk two blocks to the mini-mart and climbs twenty stairs in his building.  (TR. 501).  The Plaintiff also makes sure his house is running smoothly and contacts the building manager if any repairs are necessary.  (TR. 503).  He has difficulty sleeping and takes medication to help with sleeping.  (TR. 507).  The Plaintiff does limited cooking, usually using only the microwave.  (TR. 507).

The Plaintiff's neighbor helps him takes care of his household chores.  (TR. 503, 507).  His neighbor usually helps with the dishes because the Plaintiff has trouble using his left hand.  He also has a neighbor check on him everyday day.  (TR. 507).

The Plaintiff lives alone and receives public assistance, rental payments and medical coverage through welfare.  (TR. 500).  He visits with his sister only once or twice a year and his friend visits once or twice a week.  (TR. 502, 507-08).  The Plaintiff attends church every Sunday.  (TR. 508).

The Plaintiff takes Trileptal (for seizures), Zoloft (for depression), Prilosec OTC (for stomach problems) and Zyprexa (an antipsychotic medication).  (TR. 502-03).  He attends group psychotherapy twice a month.  (TR. 500-01).  In the thirty days prior to the ALJ hearing, the Plaintiff had three seizures.  (TR. 500, 509).

The Plaintiff testified that he is not able to treat his carpal tunnel syndrome because his doctor no longer accepts the access card.  (TR. 501).

When the ALJ asked the Plaintiff why he cannot work, the Plaintiff responded:

> I tried it.  I've been trying to get a job anywhere I can because I feel I should try to have at least a little bit of income other than assistance

coming in, but they all keep turning me down because they say their insurance won't cover an epileptic due to not being allowed to work in high places and around moving machinery, or having to be able to use anything sharp like a sharp knife or anything.

(TR. 504-05). The Plaintiff contacted the Office of Vocational Rehabilitation ("OVR") but was informed he has to go through Mental Health Mental Retardation ("MHMR"). (TR. 505). The Plaintiff's counselor does not feel he is psychologically able to work, but he is working towards being able to work an everyday job. (TR. 505).

The Plaintiff testified that he recently gained weight. (TR. 506). He believes the weight gain is due to inactivity. The Plaintiff also testified that he recently underwent a colonoscopy which revealed polyps on his esophagus. (TR. 509). The Plaintiff testified that he can lift twenty to fifty pounds, stand for two hours per day and sit for two to three hours per day. (TR. 513).

Vocational expert, George Starosta, testified according to the *Dictionary of Occupational Titles*. (TR. 510-18). The VE classified the Plaintiff as a younger individual with a limited education. He classified the Plaintiff's past work as a dishwasher as unskilled work in the light to medium duty exertional level, his work as a production worker was classified as unskilled work in the light duty exertional level, his janitorial work was classified as unskilled work in the light to medium duty exertional level and his work as a farm laborer was classified as unskilled work in the light to medium or heavy duty exertional level. (TR. 511). The VE also testified that the Plaintiff has no transferable skills. (TR. 511).

The ALJ asked the VE to hypothetically consider an individual with the Plaintiff's same age, education, past relevant work experience and medical background. (TR. 512). The hypothetical individual would have the ability to occasionally lift up to fifty pounds; frequently lift twenty to twenty-five pounds;

walk a few blocks at a time; stand up to two hours per day; sit for two to three hours per day; would have to avoid climbing ladders and scaffolds, unprotected heights, exposure to potentially dangerous machinery and would not be able to operate machinery; would not be required to drive; and would be able to perform simple grasping and gross manipulation. (TR. 513-14). The hypothetical individual suffers from depression, experiences tiredness and fatigue from medications, and would have difficulty sustaining a highly complex job, a job that is very detailed in nature or a job in which the tasks vary everyday without warning. (TR. 514). The hypothetical individual would be able to understand, remember and carry out simple instructions; make simple work-related decisions; relate appropriately with co-workers, supervisors and the general public; and relate to a work setting and to changes in the work setting. (TR. 515).

The VE testified that such an individual would not be able to perform the Plaintiff's past relevant work but would be able to perform other work. (TR. 515). The VE identified the jobs of a surveillance system monitor, with 500 available jobs in the region, 4,000 available jobs in the state and over 350,000 available jobs in the national economy; a visual inspector, with 1,050 available jobs in the region, 15,000 available jobs in the state and over 800,000 available jobs in the national economy; a weight tester, with 1,000 available jobs in the region, 12,000 available jobs in the state and over 600,000 available jobs in the national economy. (TR. 515-16).

The ALJ then asked the VE to hypothetically consider an individual with the same vocational and medical background as the Plaintiff. (TR. 516). The hypothetical individual would have the residual functional capacity as testified to by medical expert Dr. RuDusky. (TR. 516). The VE testified that such an individual would be able to perform the previously identified jobs. (TR. 516).

The ALJ next asked the VE to hypothetically consider an individual with

9

the limitations as stated by the Plaintiff. (TR. 516). The VE testified that such an individual would not be able to perform any work. (TR. 516-17). The VE stated that the Plaintiff's fatigue and interrupted sleep pattern would hinder his ability to work a six to eight hour day. (TR. 517). The VE testified that employers generally permit one and a quarter sick days per month, and three days with a doctor's excuse. (TR. 517-18). Any more days would be excessive and the individual would not be able to maintain competitive employment. (TR. 518).

### B. Medical Background.

Ronald Black, M.D., is the Plaintiff's primary care physician. On March 17, 2003, the Plaintiff's disability onset date, he asked Dr. Black to complete a state welfare disability form. (TR. 87). The Plaintiff complained of seizures despite taking his seizure medication, Dilantin. (TR. 87). Dr. Black noted that he had not seen the Plaintiff in the past year and the Plaintiff had not treated with a neurologist in the past year. (TR. 87).

On March 17, 2003, Dr. Black completed a Pennsylvania Department of Public Welfare Employability Assessment Form. (TR. 82-84). Based on physical examination and review of the medical records, Dr. Black diagnosed the Plaintiff with seizure disorder. (TR. 83). Dr. Black found that the Plaintiff was temporarily disabled for twelve months or more. (TR. 83). He noted that such disability began on March 17, 2003 and was expected to last until March 17, 2005. (TR. 83).

On May 19, 2003, the Plaintiff reported to Dr. Black that he was doing well. He reported minor seizures, though they were not bothersome to him. (TR. 168). Dr. Black's treatment notes range from noting that the Plaintiff experienced some seizures to well-controlled and stable seizures and depression. (TR. 159-69).

On May 27, 2003, the Plaintiff underwent a psychological disability

10

evaluation performed by James Williams, Ph.D. (TR. 104-11). Dr. Williams diagnosed situational depression, multiple unresolved grief reactions, and grand mal seizure disorder. (TR. 107). He noted that the Plaintiff's neurologist did not clear him to drive. (TR. 104). The Plaintiff reported that he experienced forty-six grand mal seizures over a four day period. (TR. 105). Upon examination, the Plaintiff had appropriate behaviors and psychomotor activity. (TR. 105). The Plaintiff overtly functioned within normal limits, though he expressed sadness over the death of an aunt. (TR. 105). The Plaintiff's thought levels were appropriate, he was not suicidal or delusional. He expressed concern about his health and his girlfriend. (TR. 105-06).

Dr. Williams recommended anger management. (TR. 107). He opined that the Plaintiff could engage in the basic activities of daily living, such as cleaning, shopping, cooking, using public transportation and providing for his own personal grooming and hygiene. (TR. 107). Dr. Williams noted that the Plaintiff is limited by his grand mal seizure disorder and history of bipolar disorder. The Plaintiff's concentration and task persistence would be limited by his grand mal seizure disorder. (TR. 108). Dr. Williams noted that the Plaintiff's social functioning was appropriate. (TR. 108). The Plaintiff would be able to adapt to deadlines and schedules, though his ability to meet these deadlines and schedules is unknown. (TR. 108). Dr. Williams ultimately concluded that the Plaintiff should avoid dangerous settings. (TR. 108).

The Plaintiff underwent EMG and nerve conduction studies on January 28, 2004. (TR. 177-78). He was diagnosed with left-sided carpal tunnel syndrome, not severe. (TR. 175).

On January 29, 2004, the Plaintiff treated with Dr. Black. (TR. 159). He noted acute sinusitis and there were no reports of seizures of depression. (TR. 159).

11

Dr. Black completed another Pennsylvania Department of Public Welfare Employability Assessment Form on July 22, 2004. (TR. 387-88). Based on physical examination, review of the medical records and the clinical history, Dr. Black diagnosed the Plaintiff with seizure disorder. (TR. 388). Dr. Black found that the Plaintiff was temporarily disabled for twelve months or more. (TR. 388). He noted that such disability began on July 22, 2004 and was expected to last until July 22, 2005. (TR. 388).

The Plaintiff began treating with neurologist Richard Welles, M.D., on May 6, 2003. (TR. 114). The Plaintiff reported that he had approximately thirty-six seizures over the past four days. His friend wanted to take him to the Emergency Room, but the Plaintiff refused. Dr. Welles noted a history of generalized tonic clonic seizures, difficult to control, and subtherapeutic Dilantin levels. (TR. 116).

On May 8, 2003, the Plaintiff checked himself into the Northern Tier Counseling Center due to depression and suicidal ideation. (TR. 94). While checking in, the Plaintiff had a "witnessed" seizure. (TR. 94). He was therefore taken to the Emergency Room and admitted to the Memorial Hospital due to multi-drug overdose in a suicide attempt and seizure disorder. (TR. 94-96). At the hospital, the Plaintiff's Dilantin levels were normalized and he was discharged on May 10, 2003 in stable condition. (TR. 92).

The Plaintiff underwent an EEG on May 23, 2004, which was normal. (TR. 113, 119). Dr. Welles specifically noted that there was no evidence of epileptiform activity. (TR. 113).

On August 25, 2004, the Plaintiff underwent another EEG which was essentially normal. (TR. 391). An EEG on April 25, 2005, was also normal. (TR. 449).

A Disability Determination Service ("DDS") physician completed a Physical Residual Functional Capacity Assessment form on August 20, 2003.

(TR. 123-30).  The DDS physician diagnosed seizure disorder.  (TR. 123).
The doctor found that the Plaintiff could occasionally lift and/ or carry fifty
pounds; frequently lift and/ or carry twenty-five pounds; stand and/ or walk and
sit (with normal breaks) for a total of about six hours in an eight-hour workday;
could push and/ or pull unlimitedly; could occasionally or never climb a ladder,
rope or scaffolds; and could frequently balance, stoop, kneel, crouch and
crawl.  (TR. 125).  The doctor found no manipulative limitations, no visual
limitations and no communicative limitations.  (TR. 126-27).  The Plaintiff
should avoid all exposure to hazards such as machinery or heights.  (TR.
127).  The doctor found the Plaintiff's symptoms only partially credible.  (TR.
128).  The doctor completed the RFC Assessment with a statement from a
treating or examining source regarding the Plaintiff's physical capacities, and
he noted that his conclusions were significantly different from the treating/
examining source's conclusions.  (TR. 129).

J.J. Kowalski, M.D., completed a Psychiatric Review Technique Form
on July 15, 2003.  (TR. 131-144).  Dr. Kowalski evaluated the Plaintiff's
condition under the requirements of Listings 12.02 (Organic Mental Disorders)
and 12.04 (Affective Disorders).  (TR. 131).

The Supreme Court has held that a claimant must prove that his
condition meets every criteria in a listing before he can be considered
disabled *per se*.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  A claimant is
disabled *per se* under Listing 12.04 when he either satisfies the requirements
of both 12.04(A) and 12.04(B), or of 12.04(C).  20 C.F.R. pt. 404, subpt. P,
app. 1, Listing 12.04.  Dr. Kowalski found that, although situational depression
existed, it did not "precisely satisfy the diagnostic criteria" of Listing 12.04(A).
(TR. 134).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(A).

Similarly, a claimant is disabled *per se* under Listing 12.02 when he
either satisfies the requirements of both 12.02(A) and 12.02(B), or of

13

12.02(C).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.02.  Dr. Kowalski found that a medically determinable impairment was present that "does not precisely satisfy the diagnostic criteria" of Listing 12.02(A).  (TR. 132).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.02(A).

Under the "B" criteria of Listings 12.02 and 12.04, Dr. Kowalski found there were mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (TR. 141).  20 C.F.R. pt. 404, subpt. P, app. 1, Listings 12.02(B), 12.04(B).  Dr. Kowalski also found that the evidence does not establish the presence of the "C" criteria of Listings 12.02 and 12.04.  (TR. 142).  20 C.F.R. pt. 404, subpt. P, app. 1, Listings 12.02(C), 12.04(C).

Another Physical RFC Assessment was completed on June 23, 2004. (TR. 365-72).  The DDS physician diagnosed seizures and carpal tunnel syndrome.  (TR. 365).  The doctor found that the Plaintiff had no exertional limitations.  (TR. 366).  The Plaintiff could occasionally or never climb a ladder, rope or scaffolds; and could frequently balance, stoop, kneel, crouch and crawl. (TR. 367).  The doctor found no manipulative limitations, no visual limitations and no communicative limitations.  (TR. 368-69).  The Plaintiff should avoid concentrated exposure to extreme cold or heat and should avoid all exposure to hazards such as machinery or heights.  (TR. 369). The doctor found the Plaintiff's symptoms only partially credible.  (TR. 370).  The doctor completed the RFC Assessment without a statement from a treating or examining source regarding the Plaintiff's physical capacities.  (TR. 371).

Sydney Segal, Ed.D., completed a Psychiatric Review Technique Form on June 23, 2004.  (TR. 373-86).  Dr. Segal noted that the Plaintiff's impairments were not severe and there were coexisting nonmental impairments that required referral to another medical speciality.  (TR. 373).

14

Dr. Segal evaluated the Plaintiff's condition under the requirements of Listing 12.04 (Affective Disorders).  (TR. 373).

Dr. Segal found that although depression existed, it did not "precisely satisfy the diagnostic criteria" of Listing 12.04(A).  (TR. 376).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(A).  Under Listing 12.04(B), Dr. Segal found there were mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  (TR. 383).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B).  Dr. Segal also found that the evidence does not establish the presence of the "C" criteria of Listing 12.04.  (TR. 384).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).

Another DDS physician completed a Physical RFC Assessment on January 5, 2005.  (TR. 411-18).  The DDS physician's diagnoses were seizure disorder and depression, stable.  (TR. 411).  The doctor found that the Plaintiff could occasionally lift and/ or carry fifty pounds; frequently lift and/ or carry twenty-five pounds; stand and/ or walk and sit (with normal breaks) for a total of about six hours in an eight-hour workday; could push and/ or pull unlimitedly; could occasionally climb a ramp/ stairs, a ladder, rope or scaffolds; and could frequently balance, stoop, kneel, crouch and crawl.  (TR. 413).  The doctor found no manipulative limitations, no visual limitations and no communicative limitations.  (TR. 414-15).  The Plaintiff should avoid even moderate exposure to hazards such as machinery or heights.  (TR. 415).  The doctor found the Plaintiff only partially credible.  (TR. 415).  The RFC Assessment was completed without a statement from a treating or examining source.  (TR. 417).

Dr. Kowalski completed another Psychiatric Review Technique Form on January 18, 2005.  (TR. 419-32).  He noted that the Plaintiff's impairments were not severe and there were coexisting nonmental impairments that

required referral to another medical speciality.  (TR. 419).  Dr. Kowalski evaluated the Plaintiff's condition under the requirements of Listing 12.04 (Affective Disorders).  (TR. 419).

Dr. Kowalski found that although depression/ anxiety existed, they did not "precisely satisfy the diagnostic criteria" of Listing 12.04(A).  (TR. 422). 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(A).  Under Listing 12.04(B), Dr. Kowalski found there were no restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (TR. 429).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(B).  Dr. Kowalski also found that the evidence does not establish the presence of the "C" criteria of Listing 12.04.  (TR. 430).  20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).

On April 25, 2005, the Plaintiff was admitted to the hospital and diagnosed with seizure disorder, depression and anemia.  (TR. 437).  The doctor noted that the Plaintiff had been "seizure free" for at least the previous five years.  (TR. 437).  During this one-week hospital stay, the Plaintiff underwent continuous EEG monitoring and there was no seizure activity during this time.  (TR. 437-38).  The Plaintiff was discharged in stable condition and a follow-up visit in four to six weeks with a neurologist was recommended.  (TR. 438).

## V.    DISCUSSION.

The Plaintiff alleges that the ALJ erred in the following ways: (1) by failing to give significance to the treating source opinions of Dr. Black, Dr. Williams and Dr. Welles and (2) by failing to present a hypothetical question to the vocational expert that reflected all of the Plaintiff's impairments and limitations.  (Doc. 9 at 11)**.**

16

***A. Whether the ALJ erred by failing to give significance to the
treating source opinions of Dr. Black, Dr. Williams and Dr. Welles.***

The Plaintiff argues that the ALJ substituted his own opinion for the
opinions of the treating doctors. (Doc. 9 at 11). The Plaintiff avers that all of
his treating physicians noted that he suffers from seizure disorder which
renders him disabled. (Doc. 9 at 12). Defendant argues that only Dr. Black
ever opined that Plaintiff was temporarily disabled. (Doc. 10 at 10-11).

Defendant also argues that Dr. Black's opinion of disability is not entitled
to controlling weight because a medical source statement is not entitled any
special significance, it is not well-supported by objective medical evidence and
it is inconsistent with Dr. Black's own treatment notes. (Doc. 10 at 11-12).

The Court of Appeals for the Third Circuit set forth the standard for
evaluating the opinion of a treating physician in the case of *Morales v. Apfel*,
225 F.3d 310 (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is
> that the ALJ accord treating physicians' reports great weight,
> especially "when their opinions reflect expert judgment based on
> a continuing observation of the patient's condition over a
> prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429
> (3d Cir.1999)] (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d
> Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d
> Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37,
> 40-41 (3d Cir.1989); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d
> Cir.1988); *Brewster* [v. *Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)].
> Where, as here, the opinion of a treating physician conflicts with
> that of a non-treating, non-examining physician, the ALJ may
> choose whom to credit but "cannot reject evidence for no reason
> or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason
> v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must
> consider the medical findings that support a treating physician's
> opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.
> In choosing to reject the treating physician's assessment, an ALJ

may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent [v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983)].

*Id.* at 317-18.

The ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). Although he must consider all medical opinions, the better an explanation a source provides for an opinion, particularly through medical signs and laboratory findings, the more weight [the ALJ] will give that opinion. 20 C.F.R. § 404.1527(d)(3). While treating physicians' opinions may be given more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. *See Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

On March 17, 2003, Dr. Black opined that the Plaintiff was temporarily disabled from March 17, 2003 until March 17, 2005. (TR. 83). When Dr. Black rendered this opinion he had not treated the Plaintiff for at least one year prior to the examination. On July 22, 2004, Dr. Black again found that the Plaintiff was temporarily disabled, such disability beginning on July 22, 2004 and expected to last until July 22, 2005. (TR. 388). Dr. Black's opinions of temporary disability are the only disability opinions in the record.

Dr. Williams and Dr. Welles never found that Plaintiff was disabled. As stated, Dr. Williams only ever recommended that Plaintiff attend anger management. On June 6, 2003, Dr. Williams found that, although the Plaintiff is limited by grand mal seizure disorder and history of bipolar disorder, he is nevertheless able to engage in the basic activities of daily living, such as cleaning, shopping, cooking, using public transportation and caring for his

personal needs.  (TR. 107-08).  Dr. Williams noted that the Plaintiff's social functioning is appropriate, he would be able to adapt to deadlines and schedules, but he should avoid dangerous settings.  (TR. 108).

On May 6, 2003, Dr. Welles noted a history of generalized tonic clonic seizures, difficult to control, and subtherapeutic Dilantin levels.  (TR. 116).  Dr. Welles also noted that Plaintiff's May 23, 2004 EEG was normal and there was no evidence of epileptiform activity.  (TR. 113, 119).

The ALJ noted that Dr. Black indicated on March 11, 2004, that the Plaintiff was doing well, his seizure disorder was stable and his depression was well-controlled.  (TR. 237).  Additional records reveal that the Plaintiff's seizures are stable and under good control and several EEGs were normal. (TR. 237).  The ALJ also noted that Dr. Black never indicated that the Plaintiff complained of debilitating fatigue or tiredness.  (TR. 238-39).  Dr. Black noted only mild situational depression.  (TR. 239).

The Regulations state:

> *If* we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is *well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record,* we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2) (2004) (emphasis added).  Although Dr. Black is a treating physician, his opinion is not entitled controlling weight because it is inconsistent with the other substantial evidence in the record.

Despite the Plaintiff's complaints of fatigue and seizures, the evidence reveals normal EEGs with no evidence of epileptiform activity.  (TR. 113, 119, 391, 449).  Further, the Plaintiff reported that he had been "seizure free" and that his seizures were well-controlled.  (TR. 82, 195, 298, 499).  The Plaintiff also admitted that he was able to work and had sought work.  (TR. 82, 504-

19

05).

The ALJ was faced with medical opinions from state-agency physicians and the treating physicians' opinions. When faced with conflicting medical opinions, an ALJ may choose which to credit, as long as his decision is based on substantial evidence. *Morales*, 225 F.3d at 317. In finding that the Plaintiff had the RFC for a limited range of medium work, the ALJ ostensibly credited the non-examining state-agency physicians' opinions. The ALJ included the Plaintiff's limitations when making his RFC determination. The ALJ found that the Plaintiff retained the RFC for sedentary work with seizure precautions, specifically, no ladders, unprotected heights, moving machinery or operation of motor vehicles. (TR. 241). State agency medical consultants are "highly qualified" physicians and experts in the evaluation of the medical issues in disability claims under the Act, and their opinions are entitled to weight. *See* Social Security Ruling 96-6p and 20 C.F.R. §§ 404.1527(f), 416.927(f). Thus, the ALJ did not err in crediting the opinions of the state-agency consultants.

Although an ALJ may not reject outright the opinion of a treating physician on his own credibility judgment, here, the ALJ did no such thing. *Plummer*, 186 F.3d at 429. As discussed above, the ALJ found that the Plaintiff's seizure disorder and depression were severe impairments, but not severe enough to meet or equal the criteria for establishing disability under the Regulations. The ALJ engaged in a reasoned assessment of all of the medical and other evidence of record. Substantial evidence supports his finding.

**B. Whether the ALJ erred by failing to present a hypothetical question to the vocational expert that reflected all of the Plaintiff's impairments and limitations.**

The Plaintiff argues that the ALJ failed to present a hypothetical question to the vocational expert that included all of the Plaintiff's mental and

physical impairments.  (Doc. 9 at 14).  The Plaintiff avers that the ALJ's hypothetical questions did not include his history of mental problems consisting of depression and his physical limitations including a persistent ongoing seizure disorder.  (Doc. 9 at 14).  The Plaintiff argues that the hypothetical focused on "a history of a seizure disorder" and not on the Plaintiff's current seizure disorder.  (Doc. 9 at 14).

The Plaintiff also argues that the VE testified that if the Plaintiff's testimony were accepted, then the Plaintiff would not be able to sustain any gainful employment.  (Doc. 9 at 14) (TR. 517).  However, the ALJ found the Plaintiff only partially credible.  (TR. 238).

A hypothetical question must include all of a claimant's impairments which are supported by the record; one which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim.  *Ramirez v. Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  However, "[w]e do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant."  *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

When forming his hypothetical questions, the ALJ included the impairments established by the record. He presented three specific questions including such impairments.

As stated above, the ALJ asked the VE to hypothetically consider an individual with the Plaintiff's same age, education, past relevant work experience and medical background. (TR. 512). The hypothetical individual would have the ability to occasionally lift up to fifty pounds; frequently lift twenty to twenty-five pounds; walk a few blocks at a time; stand up to two hours per day; sit for two to three hours per day; would have to avoid climbing

ladders and scaffolds, unprotected heights, exposure to potentially dangerous machinery and would not be able to operate machinery; would not be required to drive; and would be able to perform simple grasping and gross manipulation.   (TR. 513-14).   The hypothetical individual suffers from depression and experiences tiredness and fatigue from his medications.  The individual would have difficulty sustaining a highly complex job, a job that is very detailed in nature or a job in which the tasks vary everyday without warning. (TR. 514).  The hypothetical individual would be able to understand, remember and carry out simple instructions; make simple work-related decisions; relate appropriately with co-workers, supervisors and the general public; and relate to a work setting and to changes in the work setting.  (TR. 515).

The VE testified that such an individual would not be able to perform the Plaintiff's past relevant work but could perform work as a surveillance system monitor, a visual inspector and a weight tester.  (TR. 515-16).

The ALJ then asked the VE to hypothetically consider an individual with the residual functional capacity as testified to by medical expert Dr. RuDusky. (TR. 516).  The VE testified that such an individual would be able to perform the previously identified jobs.  (TR. 516).

The ALJ then asked the VE to hypothetically consider an individual with the limitations as testified to by the Plaintiff.  (TR. 516).  The VE testified that such an individual would not be able to perform any work, noting that the Plaintiff's fatigue and interrupted sleep pattern would hinder his ability to work a six to eight hour day.  (TR. 516-17).

The ALJ did not err in creating his hypothetical questions and the resulting questions included all of the Plaintiff's limitations as supported by the record.  *See Chrupcala*, 829 F.2d at 1276.   When an ALJ's hypothetical question to a VE sets forth the Plaintiff's limitations, as supported by the

record, the VE's response may be accepted as substantial evidence in support of the ALJ's determination that the Plaintiff is not disabled.   *Id*. Additionally, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference. *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); *see also Casias v. Secretary of Health & Human Servs*., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')."   *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000). Therefore, the VE's response to the questions, identifying a significant number of jobs the Plaintiff could perform, constitutes substantial evidence in support of the ALJ's determination that the Plaintiff was not disabled under the Act.

## VI.    RECOMMENDATION.

Based on the foregoing, it is recommended that the Plaintiff's appeal be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:**  November 21, 2007
O:\shared\REPORTS\2007 Reports\07-501.01.wpd

23